**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| AARON OUTLAW, #353453 | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. DKC-11-1961 |
| DR. DRUCKMEN,[1] et al., | * | |
| Defendants | * | |

**MEMORANDUM OPINION**

On July 13, 2011, Aaron Outlaw, then incarcerated at Maryland Correctional Institution – Hagerstown ("MCI-H"),[2] filed a civil rights action seeking money damages and alleging that two employees of MCI-H's contractual medical provider failed to provide adequate medication to relieve his severe and chronic pain.[3] ECF No. 1. Now pending is a Motion to Dismiss for Failure to State a Claim or, in the Alternative, for Summary Judgment filed on behalf of Defendants Dolph A. Druckman, M.D. and Physician's Assistant Emily Staub (ECF No. 12),

---

[1] The Clerk shall amend the docket to include the full and proper spelling of Dr. Druckman's name.

[2] Outlaw currently is housed at Eastern Correctional Institution at Westover ("ECI"). It appears he was transferred to ECI on August 3, 2011. *See* ECF No. 7; ECF No. 12, Affidavit, ¶ 41.

[3] Outlaw's "Supplemental to Complaint" (ECF No. 19) is construed as an opposition response to Defendants' dispositive motion. Thus, Defendants' Motion to Dismiss Supplemental to Complaint (ECF No. 21) shall be denied and Outlaw's motion for extension of time to file an opposition (ECF No. 17) shall be granted nunc pro tunc.

Outlaw's requests for appointment of counsel (ECF Nos. 20 and 24) shall be denied. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary and may be considered where an indigent litigant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 779 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). The court finds from its review of the complaint that Outlaw is able to adequately articulate the facts and grounds for relief in the instant matter without notable difficulty. Furthermore, the court concludes that Outlaw's complaint is not of undue complexity.

which shall be construed as a motion for summary judgment filed pursuant to Fed. R. Civ. P. 56,[4] and Outlaw's opposition thereto. ECF Nos. 12, 19 and 23.  Local Rule 105.6 (D. Md. 2011).

## Background

Aaron Outlaw suffers from several serious medical conditions, including a genetic disorder of the bone marrow known as familial polycythemia[5] and chronic pain caused by an old gunshot wound to the lower back and traumatic injury to the right hip and leg, for which treatment included surgical repair and internal hardware placement.  Outlaw also suffers from psychiatric disorders.[6]  ECF No. 12, Affidavit of Dolph A. Druckman, MD (hereinafter "Affidavit"), ¶ 1.

Defendant Druckman previously treated Outlaw while Outlaw was detained at the Baltimore City Detention Center.  *Id.*, Affidavit, ¶ 1.  Outlaw again came under Druckman's care after Outlaw was transferred from Jessup Correctional Institution ("JCI") to MCI-H in July of 2010.  *Id.*; *see also* ECF No. 12, Exhibit 3 at 46, Nurse Visit of July 14, 2010.[7]

While at JCI, Outlaw was under the care of prison medical personnel as well as Dr.

---

[4] The dispositive submission will be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure because materials outside the four corners of the document have been considered.  *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

[5] The disorder causes overproduction of red blood cells and thickening of the blood.  Treatment includes bloodletting (phlebotomy) to keep the red blood cell count below certain levels.  ECF No. 12, Affidavit of Dolph A. Druckman, MD, ¶ 2.  Ann Zimrin, MD of the University of Maryland Medical Center (UMMC) had determined this was the best course of treatment for Outlaw.  *Id.*, Exhibit 1, ¶ 3; Exhibit 3 at 1109-1111.

[6] Outlaw's other health concerns, including diagnosis and treatment for a kidney stone, mental health care, asthma, hematuria (blood in the urine) and his blood disorder are not at issue here, except to the extent these conditions may have contributed to his complaints of chronic pain.  Outlaw's claim of an Eighth Amendment violation primarily centers on changes to prescribed pain medications that occurred subsequent to his transfer from JCI to MCI-H in July of 2010.

[7] Counsel is reminded that pursuant to Local Rule 102.2(.b), all documents filed with the court shall be numbered at the bottom of every page after the first page, and documents submitted in hard copy shall be two-hole punched at the top of the page.  Court staff has corrected this deficiency on this occasion.  Furthermore, counsel is reminded to provide record citation that supports averments provided by way of affidavit.

Cornell Shelton, a pain management specialist practicing at Bon Secours Hospital in Baltimore. Dr. Shelton examined Outlaw for complaints of chronic pain on March 18, 2010. Dr. Shelton noted Outlaw's history of heroin abuse, including heroin use on January 4, 2010, and nonetheless recommended chronic pain medications, including the opiod MS Contin,[8] 30 mg. every twelve hours, Lyrica (also known as pregabalin, a medication used to treat neuropathic pain often associated with diabetes or fibromyalgia),[9] and Zanaflex (a short-term medication used as a muscle relaxant and pain reliever).[10] Physical therapy also was recommended. ECF No. 12, Affidavit, ¶ 3; Exhibit 3 at 944-946.

The parties do not contest that the recommended medications were initially prescribed by prison health care providers. As previously noted, Outlaw was transferred to MCI-H in mid-July of 2010. At time of transfer, he was receiving various pain medications, including Nubain,[11] MS Contin,[12] and Tylenol with codeine. ECF No. 12, Exhibit 3 at 46. On August 5, 2010, Druckman first examined Outlaw in conjunction with a "pain management review." ECF No. 12, Affidavit, ¶ 4; Exhibit 3 at 84. Druckman, who had treated Outlaw in the past, determined that x-rays and examination did not support Outlaw's "atypical pain pattern" and Outlaw was engaging in "drug seeking behavior." Druckman advised Outlaw that he would receive no

---

[8] *See* http://www.drugs.com/oxycodone.html.

[9] *See* http://www.pfizerpro.com/hcp/lyrica.

[10] *See* http://www.drugs.com/zanaflex.html.

[11] Nubain is a potent injected synthetic opiod analgesic similar to oxymorphone. *See* http://www.drugs.com/pro/nubain.html. It appears Outlaw was first prescribed Nubain at the time of transfer to MCI-H. ECF No. 12, Exhibit 3 at 46. The medication was not available between July 31 and August 5, 2010, because it was on back-order; it appears, however, that Outlaw received the medication once it again was made available. *Id.*, Exhibit 3 at 74, 76-78.

[12] The dosage of this drug had been reduced from the 30 mg. recommended by Dr. Shelton to 15 mg. *Id.*, Exhibit 3 at 46.

additional pain medication but would be provided MS Contin, Nubain and Naproxen.[13]  *Id*., Affidavit, ¶ 4 and Exhibit 3 at 84-84.

On August 9, 2010, Outlaw was transferred to Metropolitan Transition Center (MTC) and then to Maryland Reception Diagnostic and Classification Center (MRDCC).  Neither Druckman nor Defendant Staub treated Outlaw while he was held at these Baltimore-based institutions. ECF No. 12, Affidavit, ¶ 5.

Outlaw returned to MCI-H on December 23, 2010, with a current prescription for MS Contin at a daily dosage of 60 mg.  This prescription was continued by Druckman.  *Id*., Affidavit, ¶ 6; Exhibit 3 at 252-54, 278-79.  During January, 2011, Outlaw complained of blood in his urine but denied abdominal discomfort.  Irregularities led medical personnel to conclude Outlaw had altered the urine specimen.  An enema was given to relieve constipation pain.  On January 31, 2011, Dr. Colin Ottey admitted Outlaw to the MCI-H Infirmary for complaints of abdominal pain.  All medications were continued while the cause of the problem was explored. *Id*., Affidavit, ¶¶ 7- 13; Exhibit 3 at 956.

On February 1, 2011, Druckman examined Outlaw in the Infirmary and concluded that ileus (bowel obstruction) due to a recent increase in his morphine dosage could not be ruled out. Abdominal x-rays supported this clinical impression. On February 3, 2011, Druckman examined Outlaw in the Infirmary and found him hypersensitive to light touch on his abdomen. Laboratory testing showed polycythemia. Urine showed blood, but a dipstick specimen obtained the day before was negative. Druckman ordered a urine culture and continued all medications.

---

[13] Naproxen is a non-steroidal anti-inflammatory drug (NSAID) used to treat pain associated with joint and muscular problems.  *See*  http://www.bing.com/health/article/goldstandard-GS80421/Naproxen-and-naproxen-sodium-oral-immediate-release-tablets?q=naprosyn&qpvt=Naprosyn.

Druckman also submitted a consultation request to Wexford[14] for a CT scan of Outlaw's kidneys to rule out recurrent kidney stones as a cause for his abdominal pain.[15]  On February 4, 2011, Druckman informed Outlaw that pain medications would continue until it was determined if he had kidney stones. Druckman also indicated that the abdominal pain was most likely due to his pain medications and that the reported symptoms exceeded the objective information found upon examination. Outlaw insisted that he had massive kidney stones. Nubain and all other pain medications were continued.  *Id*., Affidavit, ¶¶ 15-19; Exhibit 3 at 312-21, 330.

On February 8, 2011, Druckman examined Outlaw and reviewed urine culture results showing polymicrobial growth, which indicated likely contamination or adulteration of the urine sample.  Druckman told Outlaw of the need to collect a urine sample from a catheter. Outlaw refused because of the pain associated with placing a catheter, but later agreed. All pain medications were continued.  *Id*., Affidavit, ¶ 20. At that time Outlaw was receiving morphine and Nubain. *Id*., Affidavit, ¶ 21; Exhibit 3 at 359-60, 378-79.

On February 15, 2011, Outlaw complained that he had not yet received his Nubain at the time Druckman made his rounds. Druckman decreased the dose of MS Contin from 60 mg. to 45 mg daily and ordered phlebotomy for the next day.  *Id*., Exhibit 3 at 428-29.  On February 23, 2011, a CT scan was completed at Bon Secours Hospital.  The results were unremarkable; no kidney stones were seen and there was no evidence of colitis or diverticulitis. Outlaw was determined to be constipated, which is a known side effect of MS Contin. PA Staub discussed these results with  Outlaw. *Id*., Affidavit, ¶ 22-24; Exhibit 3 at 508.

---

[14] Wexford is the utilization review contractor for the State of Maryland.  Wexford reviews and must approve all requests by on-site and off-site consultants for certain medical devices and tests.  Druckman and Staub, employees of Corizon, Inc., f/k/a Correctional Medical Services, Inc. ("CMS"), are not affiliated with Wexford and are not involved in the approval process.

[15] The consultation was approved and took place on February 23, 2011.

On March 1, 2011, Outlaw first complained of right hip pain to Defendant Staub. Staub discontinued Nubain, but continued all other medications and ordered an x-ray, which was unremarkable. Outlaw requested that his MS Contin dose be increased to 60 mg. due to his hip pain. Staub opined that Outlaw had an opioid dependence. Staub ordered additional x-rays of Mr. Outlaw's lower back and right knee on March 2, 2011 in response to new complaints of pain in these areas. These, too, were unremarkable. *Id*., Affidavit, ¶¶ 25-26; Exhibit 3 at 547-55.

On March 7, 2011, Druckman examined Outlaw in response to complaints of pain all over his body. Outlaw answered "I don't know" to specific inquiries about the pain, showed no signs or symptoms of pain, and asked for more MS Contin. Druckman found Outlaw was drug-seeking and ordered a repeat phlebotomy which was given the following day. Outlaw then asked that his MS Contin dosage be increased to 60 mg. for neck and back pain. Druckman found no objective evidence of pain and told Outlaw that his MS Contin dosage could not be increased without consensus from multiple disciplines. A March 11, 2011, examination revealed tenderness and right paraspinal spasm and sciatic notch tenderness. Druckman ordered a trial of Zanaflex to address these complaints of pain in his back and right leg. *Id*., Affidavit, ¶¶ 27-30; Exhibit 3 at 635-41.

On March 14, 2011, Outlaw informed Staub that his pain was at a 9/10. She noted, "[t]here is absolutely no s/s or any kind of distress or discomfort. He is relaxed to the point of falling asleep. He does not wince or grimace. He is not restless or agitated. Breathing is slow, even and unlabored." His medications, including MS Contin, were continued. *Id*., Exhibit 3 at 656-57. The following day, Druckman examined Outlaw, prescribed Plavix, and ordered phlebotomy as adjunctive care in the treatment of polycythemia. Outlaw reported that the Zanaflex was helping his back spasms. MS Contin, at 45 mg. daily, was continued. *Id.,* Affidavit at 32; Exhibit 3 at

669. On March 18, 2011, Staub discharged Outlaw from the infirmary, noting that his constipation had resolved when his dosage of MS Contin decreased. At time of discharge Outlaw had complaints of chronic low back pain related to his past gunshot wound. Zanaflex was administered with MS Contin to treat the pain. Staub further noted that Outlaw had no complaints since the adjustment of his medication. *Id.,* Affidavit, ¶ 33; Exhibit 3 at 695-97.

Druckman submitted a consultation request to Wexford for a CT of the spine which was approved. *Id*., Exhibit 3 at 710. The CT scan was initially scheduled for April 20, 2011. Plaintiff declined. The CT was re-scheduled and completed on July 7, 2011. No fracture, degenerative change, or stenosis was observed. On April 27, 2011, Outlaw refused to have his blood drawn. *Id*., Affidavit, ¶¶ 34-35; Exhibit 3 at 737, 808.

MS Contin is administered at MCI-H on a "watch take" status, meaning the patient is observed taking the medication and his mouth inspected after ingestion. On April 29, 2011, Staub charted the following:

> Patient has been on MS contin for awhile and he has been noted to cheek his medication on medline. Case discussed with Dr. Druckman and he recommends switching the patient to 15 mg of methadone BID. Narcotic form filled out today and given to pharmacy nurses. Correct RX notified and methadone does not require a nonformulary. Pharmacy Nurses: Please D/C MS Contin when methadone arrives!

*Id.,* Exhibit 3 at 732-33. Druckman replaced Outlaw's MS Contin[16] with an equivalent dose of methadone, which can be administered by dissolving it in liquid. Outlaw was told the reasons for changing his medications during a May 3, 2011, consultation with Druckman and Staub. *Id.*, Affidavit, ¶¶ 36-39. Druckman consulted with Dr. Shelton, Outlaw's pain management specialist, who agreed both with the substitution of methadone for MS Contin and with the dosage. *Id.*, Affidavit, ¶ 40.

Druckman left his position at MCI-H on May 30, 2011. On August 3, 2011, Outlaw was transferred to ECI. *Id.*, Affidavit, ¶ 41; *see also* Exhibit 3 at 737-38.

**Standard of Review**

Rule 56(a) & (c) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
>
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine

---

[16] MS Contin is an extended release tablet that must be taken as a whole tablet. *See* ECF No. 12 at 4, n. 1.

dispute, or that an adverse party cannot produce admissible evidence to support the fact.

This does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

The party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has met that burden, the non-moving party must come forward and demonstrate that such an issue does, in fact, exist. *See Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)); *see also Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

The court generally must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris,* 550 U.S. 372, 376-77 (2007).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Id.* at 380.

## Analysis

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). When contractual prison health care providers show "deliberate indifference" to a prisoner's "serious medical needs," their actions or omissions give rise to an Eighth Amendment violation. *Id*. at 104. The named individual "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990). A defendant must know of and disregard an excessive risk to inmate health or safety. "[T]he [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U. S. at 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. *See Miltier,* 896 F.2d at 848; *see also Short v. Smoot*, 436 F.3d 422, 427 (4th Cir. 2006) (quoting *Farmer*, 511 U.S. at 835). An inmate's disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

Here, MCI-H medical personnel, including named Defendants Druckman and Staub, continued to provide potent pain medications to Outlaw, a former heroin user, after his transfer from JCI. In addition to the MS Contin prescribed by pain management consultant Dr. Shelton, other pain medications, including Nubain[17] and NSAIDs, were provided, even though some of the medications likely led to constipation and digestive upset. Outlaw was provided medical care for those side-effects, including diagnostic testing and a lengthy stay in the prison Infirmary. Outlaw's own behavior suggests he became overly reliant on these medications and/or otherwise misused his access to them. When confronted with such behavior, Defendants substituted other pain medications after consultation with Dr. Shelton.

In short, Outlaw received adequate medical care for all of his health needs, including pain management. Nothing more is constitutionally required, and Defendants are entitled to summary judgment. A separate Order shall be entered in accordance with this Memorandum Opinion.

February 27, 2012             _____/s/_____
(Date)                         DEBORAH K. CHASANOW
                               United States District Judge

---

[17] Although the injectable opiod Nubain was unavailable from outside sources for a period of six days, Outlaw nonetheless continued to receive MS Contin during that time. Nothing suggests Defendants or MCI-H medical personnel were responsible for the manufacturer's shortage of the medication.